# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

FAUSTIN CORNETTE, *on behalf of*
*himself and all others similarly situated,*

      Plaintiff,

v.                            Case No.: 1:16-cv-24454-MGC

I.C. SYSTEM, INC., and MD NOW MEDICAL
CENTERS, INC.,

      Defendants.
_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, Defendant I.C. SYSTEM, INC. ("ICS" and/or "Defendant"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, hereby files this Motion for Summary Judgment, and states the following in support thereof:

### I.    Factual Background / Procedural History.

#### a.    *State Court Action.*

On December 16, 2015, Plaintiff filed a two-count complaint in the Circuit Court of Palm Beach County, Florida, against ICS and MD Now Medical Centers, Inc. ("MD Now"). *See,* DE 49-1. That case was styled *Faustin Cornette, on behalf of himself and others similarly situated, v. I.C. Systems, Inc., and MD Now Medical Centers, Inc.,* Case No. 2015-CA-013900 (the "State Court Action"). *Ibid.* In the State Court Action, Plaintiff claimed Defendants violated the Florida Consumer Collection Practices Act and ("FCCPA") and the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") by including a collection fee in a dunning letter sent by ICS on behalf of MD Now. *Ibid.*

On March 4, 2016, MD Now filed a Motion to Dismiss asserting the Complaint was subject to dismissal, as:

> Plaintiff specifically agreed in his "Patient Consent, Responsibilities, and Disclosures" form with MD Now … that such a Collection Charge … would be imposed if he failed to pay his medical bill timely.

*See,* DE 49-2 at p. 2.

After hearing arguments of counsel on May 19, 2016, the Honorable Catherine M. Brunson entered an Order granting MD Now's Motion to Dismiss without prejudice. *See,* DE 49-3. Despite the dismissal without prejudice, Plaintiff did not file an amended complaint in state court. Instead, on October 21, 2016, Plaintiff initiated the instant matter in this Court. *See,* DE 1.

### b.  *Alleged Violations of the FDCPA, FCCPA and FDUPTA.*

On March 10, 2017, Plaintiff filed his First Amended Class Action Complaint alleging: (1) violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") against ICS only; (2) violations of the FCCPA against ICS and MD Now; (3) violations of the FDUPTA against ICS and MD Now; and (4) breach of contract against MD Now, only. *See,* DE 47, generally.[1] The claims of Plaintiff and the putative class arise out of the same letter that formed the basis for the State Court Action. *See,* DE 1-4. That letter, sent by ICS, requested payment by Plaintiff resulting from medical services in the amount of $226.73 which consisted of $188.94 as the "Principal due" and $37.79 as the "Collection Charge Due." *See,* DE 47-4.

Specifically, Plaintiff and the putative class allege that ICS violated various provisions of the FDCPA, FCCPA, and FDUPTA as follows:

- ICS violated § 1692e(2)(A) of the FDCPA when it "falsely represented the character, amount, and legal status of the alleged debt when it sent a bill to Plaintiff demanding payment of an

---

[1] The Amended Complaint was filed pursuant to an agreement of the parties to correct "a factual inaccuracy" in the original Complaint. *See,* DE 46.

amount that included an illegitimate 20% collection gratuity fee." *See,* DE 47 at ¶ 78.

- ICS violated § 1692f(1) of the FDCPA when it "attempted to collect an alleged consumer debt not permitted by law and the Contract when it sent a bill to Plaintiff and demanded payment of the illegitimate 20% collection gratuity fee." *Ibid.* at ¶ 84.

- ICS violated § 559.72(9) of the FCCPA because it "asserted a non-existent right to collect the illegitimate debt when it added the illegal 20% collection gratuity fee to the Plaintiff's past due balance." *Ibid.* at ¶ 90.

- ICS violated § 559.72(9) of the FCCPA when it "knowingly attempted to collect an illegitimate consumer debt because it knew that MD Now had not incurred any collection costs when it added the illegal 20% collection gratuity fee to the Plaintiff's past due balance… [and] because it regularly charges consumers percentage-based collection gratuity fees that are untethered to the actual costs of collection." *Ibid.* at ¶¶ 91-92.

- ICS violated the FDUPTA "when it attempted to collect a 20% collection charge not owed" as "a violation of Fla. Stat. § 559.72(9) is a *per se* violation of FDUTPA" and "generally… when it engaged in unfair and deceptive practices in trade or commerce by taking advantage of Plaintiff by charging him for fees not owed and misleading him into believing that he owed the 20% collection gratuity fee" *Ibid.* at ¶¶ 97-99.

### c. *Factual Background.*

On March 25, 2015, Plaintiff received medical treatment at a facility owned by MD Now. *See,* DE 47 at ¶ 36. Prior to receiving the medical treatment, Plaintiff executed agreements with MD Now that provided in part: "[I]n the event collection activity is required to be initiated by MD NOW, I hereby guarantee payment of all attorney's fees, court costs and collection charges incurred up to 40% of the outstanding principal" and "[I]n the event suit is filed for collections on medical bills due to MD Now Medical Centers, Inc. I agree to pay, in addition to any medical bills, all expenses related to collections of said medical bills, including reasonable interest,

collections, attorney's fees and cost incurred by MD Now Medical Centers, Inc." *Ibid.* at ¶¶ 37-41.

On or about June 3, 2015, MD Now sent Plaintiff a statement seeking payment of $188.94 for the medical care he received. *Ibid.* at ¶ 42; DE 47-3.  Plaintiff acknowledges that as of October 2015, "Plaintiff had not paid MD Now for the medical care he received on March 25, 2015." *See,* DE 47 at ¶ 43.

On October 19, 2015, MD Now referred a number of delinquent accounts, including Plaintiff's account, to ICS for collection. *Ibid.* at ¶ 46; Dec. Morrison at ¶ 7.[2] When MD Now refers accounts for collection, the information is transmitted electronically in essentially the same format as an Excel spreadsheet. ICS refers to this type of transmission as a "data dump." *Ibid.* at ¶ 9. As part of the data dump that included Plaintiff's delinquent account, MD Now provided, *inter alia*, Plaintiff's account number, Plaintiff's identification and contact information, and a "Total Amount" of $226.73 consisting of $188.94 in "Principal" and a $37.79 "Collection Charge." *Ibid.* at ¶ 10.

On October 22, 2015, ICS sent a letter to Plaintiff seeking payment of the balance claimed due by MD Now resulting from Plaintiff's medical treatment ("collection letter"). *See,* DE 47 at ¶ 47. ICS's collection letter identified the "BALANCE DUE" to MD Now as $226.73, and specified that the total amount was calculated as $188.94 for "Principal Due" and $37.79 for "Collection Charge due." *See,* DE 47-4, DE 47 at ¶¶ 47-50.  As required by the FDCPA, ICS's collection letter sent to Plaintiff also included the following Notice:

---

[2] A true and correct copy of the Declaration of ICS' Client Service Department employee Joanna Morrison ("Dec. Morrison") is attached hereto as Exhibit "A."

NOTICE

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume this debt is valid.  If you notify us in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you make a request in writing within 30 days after receiving this notice we will provide you with the name and address of the original creditor, if different from the current creditor.

*See,* Exhibit "3" of Dec. Morrison.

Plaintiff never disputed the debt with ICS prior to Plaintiff filing suit against ICS in state court. *See,* Dec. Morrison at ¶ 21. In fact during deposition, Plaintiff acknowledged he attempted to pay the entire balance ($226.73) through ICS's website, but was unable to do so as the website "would not give him a confirmation of payment." *See,* DE 47 at ¶ 51. As such, Plaintiff alleges that he instead submitted payment of $188.94 through MD Now's website. *Ibid.*

### d.  The "Premier Collect Agreement" between ICS and MD Now.

MD Now contracts with I.C. System to collect unpaid medical debts from consumers in Florida on its behalf. *See,* Dec. Morrison at ¶ 22; DE 47 at ¶ 44. The controlling contract between ICS and MD Now is the "Premier Collect Agreement" that was executed on or about September 3, 2013. *See,* Dec. Morrison at ¶ 23; DE 49-4.

Pursuant to the terms of the Premier Collect Agreement, any account placed by MD Now for collection by ICS where the balance due exceeds $150.01 – *e.g.*, Mr. Cornette's unpaid bill of $188.94 – is subject to a collection fee of 20% of the balance due. *See,* DE 49-4 at p. 2.

If a client of ICS indicates it wants ICS to add a collection fee to the client's accounts, ICS reviews the client's contract with its customers to determine if the contract contains a collection fee provision. *See,* Dec. Morrison at ¶ 27. If the contract contains a collection fee provision, ICS will agree to add a collection fee, as long as the collection fee does not exceed the percentage the client has agreed to pay ICS in the client's contract with ICS. *Ibid.* ICS does not provide its clients with legal advice regarding the clients' contracts with their customers. *Ibid.*

Instead, ICS relies on its clients to determine the clients' legal rights regarding the clients' contracts with their customers. *Ibid.* With respect to MD Now, its customer agreement contained a collection fee provision of "up to 40% of the outstanding principal." *Ibid.* Pursuant to its policy, ICS agreed to add a collection fee. However, consistent with the Premier Collect Agreement with MD Now, ICS limited the collection fee to 20%.

The Premier Collect Agreement also states that MD Now is "**responsible for providing accurate and up-to-date account information**" to ICS and MD Now "<u>must provide accurate information on each account</u>… [placing] ***only*** amounts… that are validly due and owing by the debtor indicated." *See,* DE 49-4 at ¶ 4 (emphasis in original).

In addition, the Premier Collect Agreement further states that MD Now had "signed agreements from every debtor acknowledging they knew [MD Now] could possibly add… collection fees to their overdue account." *Ibid.* at p. 4.

Through the instant Motion, ICS seeks summary judgment as there is no genuine issue of material fact and ICS is entitled to judgment as a matter of law on Plaintiff's claims in their entirety.

## II.      Legal Standard.

Summary judgment is appropriate only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Where the non-moving party bears the burden of proof on an issue at trial, the movant may simply "[point] out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

After the movant has met its burden under Rule 56(c), the burden shifts to the non-moving party to establish that there is a genuine issue of material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). Although all reasonable inferences are to be drawn in favor of the non-moving party, *Anderson v, Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The non-moving party may not rest upon the mere allegations or denials of the adverse party's pleadings, but instead must come forward with "specific facts showing that there is a *genuine issue for trial.*" *Id*. at 587 (citing Fed. R. Civ. P. 56(e)).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id*. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the non-moving party fails to make a sufficient showing on an essential element of his case on which he has the burden of proof, the moving party is entitled to a judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

### III.    Argument.

### a.  ICS had the right to rely on MD Now to determine the amount due from Plaintiff and had no duty to perform a pre-collection investigation into the validity of a debt.

Plaintiff's FDCPA claims are predicated exclusively on the alleged "illegitimate 20% collection gratuity fee" that was included in the amount sought for collection in ICS' collection letter to Plaintiff.  However, the total amount sought by ICS was the exact amount referred for collection by MD Now. Specifically, MD Now's informed ICS the balance of Plaintiff's debt

was $226.73, comprised of $188.94 in principal and a $37.79 collection fee. *See,* Dec. Morrison ¶ 10. In turn, ICS' collection letter identified the "BALANCE DUE" to MD Now as $226.73, and specified that the total amount was calculated as $188.94 for "Principal Due" and $37.79 for "Collection Charge due." *See,* DE 47-4, DE 47 at ¶¶ 47-50. As will be demonstrated below, Plaintiff's FDCPA claims against ICS fail to establish a genuine issue of material fact as ICS was entitled to rely on the representations made by MD Now as to the legality and validity of the "Collection Charge" imposed by MD Now on Plaintiff.

Federal and Circuit Courts have consistently held that debt collectors, in general, and ICS, in specific, are permitted to rely on information provided by their clients without incurring liability under the FDCPA. The rationale for these rulings has been consistent: the FDCPA does not require debt collectors to conduct an independent investigation into the amount or validity of the underlying debt prior to collections. *See, e.g. Pratt v. I.C. System, Inc.,* Case 0:05-cv-60678-UU (S.D. Fla May 2006) ("[i]t is well settled that debt collectors are entitled to rely on the information they receive from creditors and are not held strictly liable when they mistakenly attempt to collect amounts in excess of what is due, if they reasonably relied on information provided by their clients.");[3] *see also, McStay v. I.C. Sys. Inc.,* 174 F. Supp. 2d 42 (S.D. N.Y. 2001) ("A debt collector must be able to rely on representations from his client as to the amount of the debt. The FDCPA does not require debt collectors to conduct independent investigations of the information provided by clients when collecting a debt"); *Slanina v. United Recovery Systems. L.P.,* 2011 U.S. Dist. LEXIS 121356 (M.D. Pa. 20ll) (Requiring debt collectors to investigate and verify a debt *before* collection would create an additional duty not found in the statute's plain language and would render  1692g(a)(4) superfluous); *Clark v. Capital Credit &*

---

[3] A true and correct copy of the Order Granting defendant's MSJ in *Pratt v. I.C. System, Inc.*, Case 0:05-cv-60678-UU (S.D. Fla May 2006) (J. Ungaro), is attached hereto as Exhibit "B."

*Collection Serv.*, 460 F.3d 1162, 1177 (9th Cir. 2006) ("[I]f a debt collector reasonably relies on the debt reported by the creditor, the debt collector will not be liable for any errors.); *Jenkins v. Heintz,* 124 F.3d 824, 833-34 (7th Cir. 1997) (debt collection law firm not required to conduct an independent investigation into the legal intricacies of the client's contract); *Smith v. Transworld Sys., Inc.,* 953 F.2d 1025, 1032 (6th Cir. 1992); *Solomon v. Baer & Timberlake, P.C.*, 504 F. App'x 702, 705 (10th Cir. 2012) (Defendant could not be held liable for any alleged misrepresentations about the amount of the debt because it reasonably relied upon information from its client, which it is permitted to do.)

*Pratt* is legally and factually indistinct from the instant case and compels the same result. In that case, the plaintiff argued ICS violated the FDCPA's prohibition on the collection of "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt." *Pratt,* 0:05-cv-60678-UU at p. 10. In seeking summary judgment, ICS argued that even if the amounts it attempted to collect, including "additional client charges" and 10% interest, were not authorized by the plaintiff's agreement with the original creditor, ICS had a right to rely on the creditor's representation that these amounts were due. ICS presented evidence the creditor informed it that "the principal balance of the debt was $60.00 and that an 'additional client charge' of $10.00 was due from Plaintiff." The Court agreed with ICS, stating:

> …even if Plaintiff is correct that his agreement with AHHC did not provide for the additional ten dollar charge or the 10% interest, Defendant is not liable under § 1692f(1) or § 1692e(2) because there are no material facts in dispute that one AHHC informed Defendant these charges were due from Plaintiff, and two, that Defendant reasonably relied on these representations.

*Id.*

Likewise in *McStay*, ICS faced similar allegations and was granted summary judgment. The plaintiff in *McStay* alleged ICS violated § l692e(2) when its letter "attempted to charge an annual interest rate of 12% in each of its letters, in excess of the 9% rate mandated by" statute. *Id.,* 174 F. Supp. 2d 42. As it argued in *Pratt*, ICS demonstrated it had simply received the amount of debt information from its client. The court granted summary judgment stating: "A debt collector must be able to rely on representations from his client as to the amount of the debt. The FDCPA does not require debt collectors to conduct independent investigations of the information provided by clients when collecting a debt." *Id.* In that case as in this one, ICS was told by its client the amount owed by the customer. ICS made no independent determination of the amount owed nor was it required to under the FDCPA.

In *Ducrest v. Alco Collections,* plaintiff alleged the debt collector violated 1692f(l) "by sending a demand letter to plaintiff which demanded payment of charges which were not expressly agreed upon between the parties." *Id.,* 931 F. Supp. 459, 460 (D. La. 1996). The defendant sought summary judgment motion arguing it had a right to rely on its client to provide information related to the amount due. *Id.,* at 461. The court agreed and dismissed the case, stating:

> [T]o state a claim under §1692f(1) plaintiff would have to show that defendant was knowingly attempting to collect a charge not authorized by the lease and not permitted by law. A debt collector should be able to rely on the representation and implied warranty from its client that the amount was due under either the lease or the law. The FDCPA does not require an independent investigation of the information provided by clients when a debt collector tries to collect a debt, nor does it require the debt collector to dispute the creditor's construction of a contract.

*Id.* at 462.

In *Hubbard v. National Bond & Collection Assoc.*, 126 B.R. 422, 426 (D. Del. 1991), aff'd, 947 F.2d 935 (3d. Cir. 1991), the plaintiff debtor sued the defendant collector for its efforts to collect a debt that was part of an estate put into bankruptcy prior to the collection efforts. The contact with plaintiff consisted of a single letter, followed by direct telephone communication with the plaintiff. All collection activity ceased following the telephone conversation. The Bankruptcy Court reasoned that it was against public policy to require a debt collector to fully investigate a debtor's background before proceeding to collect a debt:

> The statutory scheme of the FDCPA thus allows debt collectors to avoid the costs of investigating a debtor's background and ensures a cost effective means by which a debtor and debt collector can exchange information. This is an important part of the FDCPA's statutory scheme. The plaintiff's contention that debt collectors must bear the entire burden of collecting information concerning debtors ignores the importance of § 1692g and the Congressional intent behind its enactment.
> …
>
> In the present case §1692g functioned as it was intended. Unaware that [plaintiff] had filed for bankruptcy, National Bond tried to collect a $957.15 debt from her. The collection notice contained the required written statement that Ms. Hubbard had a right to contest the debt. Ms. Hubbard promptly contacted National Bond, contested the debt, and notified it that she had filed for bankruptcy. At this point all debt collection efforts by the defendant ceased. The statutory scheme worked.

*Id.*

In its contract with ICS, MD Now represented it would only refer accounts that were "validly due and owing by the debtor" and had "signed agreements from every debtor acknowledging that they knew [MD Now] could possibly add… collection fees to their overdue account." *See,* DE 49-4 at p. 4. As such, ICS was legally entitled to rely, and in fact did rely, on the representations from MD Now that the "BALANCE DUE" of $226.73, which included a "Collection Charge," was validly due and owing. *See,* Dec. Morrison at ¶¶ 14-15.

Moreover, upon MD Now's referral of the account at issue, ICS performed the following standard procedures prior to beginning collection efforts on the account:[4]

- ICS sent the debtor's information to Experian for scoring and to verify certain information was still good and accurate information, including but not limited to the debtor's name, address, social security number, and telephone number(s).  The results from Experian verified the information that ICS was provided by MD Now.

- ICS performed a cellphone scrub to determine whether the telephone number that was provided to it was or was not a cellular telephone so as to avoid potential issues with the Telephone Consumer Protection Act.

- ICS performed a bankruptcy scrub to determine whether the debtor had filed any bankruptcy petitions in order to avoid violation of bankruptcy stays.  The results indicated that the debtor had not filed any bankruptcy petitions.

- ICS performed a search using the nation change of address database ("NCOA") to ascertain whether the debtor had moved recently and to ensure that it mailings reached the intended recipient.  The results indicated that the debtor's address that was provided by MD Now to ICS was a reliable address for the debtor.

After performing these tasks, ICS commenced its collection activity on Plaintiff's account and received notification that payment had been received by MD Now only eleven days after referral to ICS. *See,* Dec. Morrison at ¶ 20. Upon receipt of notice that payment had been received, ICS conducted no further collection activity on Plaintiff's account. *Ibid.*  Succinctly stated: "[t]he statutory scheme worked." *See, Hubbard, supra.*

As a result, Plaintiff's FDCPA claims fail to establish a genuine issue of material fact as ICS was entitled to rely on the representations of MD Now and had no duty to perform an independent investigation into the validity of the "Collection Charge" included in the "Total Amount" of Plaintiff's outstanding debt to MD Now.

---

[4] ICS' procedures are documented as having occurred not only by ICS' Declaration, but also such procedures are documented in its Account Notes (Exhibit "1" to Dec. Morrison) as having been performed.

**b. Plaintiff waived his right to pursue his FDCPA claims by failing to exercise his right to dispute the validity of the debt with ICS.**

In addition to prohibiting certain debt collection practices, the FDCPA places an affirmative duty on debt collectors to provide certain information to debtors. *See,* 15 U.S.C. § 1692g(a). Specifically, the FDCPA requires a debt collector to send the consumer, within 5 days of initial communication, a written notice containing:

> **(1)** the amount of the debt;
>
> **(2)** the name of the creditor to whom the debt is owed;
>
> **(3)** a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> **(4)** a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> **(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

*See,* § 1692g(a)(1)-(5).

Through this process, the consumer is given the immediate opportunity to dispute the debt and, if the consumer requests debt verification, all collection efforts must cease until verified. *Id.* In this case, Plaintiff's FDCPA claims are predicated exclusively on the alleged "illegitimate 20% collection gratuity fee" ICS sought to collect. Yet, Plaintiff never disputed the validity of the debt with ICS. Instead, he filed his initial lawsuit in state court and then the instant action in this Court claiming the collection fee was unlawful. *See,* DE 49-1, DE 1.

Plaintiff's claims run counter to the statutory language of the FDCPA which give debt collectors the right to "assume" the debt is "valid" if the debtor fails to dispute the debt within the 30-day validation period. § 1692g(a)(3) (emphasis added). Simple stated, the statutory language "demonstrates that, absent a dispute, the debt collector is allowed to assume the debt is valid." *See, Palmer v. I.C. Sys., Inc.*, C-04-03237 RMW, 2005 WL 3001877, at *5 (N.D. Cal. Nov. 8, 2005). Given the statute's clear language, common sense dictates "where it is undisputed that the consumer never contacted the collector to contest the debt before the final collection attempt, plaintiff cannot assert a cause of action under the FDCPA solely based upon the debt collector's attempt to collect an invalid debt." *Id.*

In *Bleich v. Revenue Maximization Group, Inc.*, the debt collector sent correspondence to the plaintiff to collect a debt that, unbeknownst to the defendant, the plaintiff alleged had already been satisfied. *Id.*, 233 F. Supp. 2d 496, 501 (E.D.N.Y. 2002). The defendant's initial collection letter, like ICS's letter to Plaintiff, contained the "specific information required by the FDCPA regarding the validity of the debt at issue… [advising] that the debt would be assumed to be valid unless, within thirty days of receipt of the letter, Plaintiff disputed its validity." *Id.* at 498. Upon receipt of the letter, the plaintiff, like Plaintiff in this case, "did not take advantage of the statutory debt validation procedure… [and] made no attempt to contact [the debt collector] directly regarding the debt." *Id.* The *Bleich* court granted summary judgment in favor of the debt collector, stating:

> where a debt collector has included appropriate language regarding the FDCPA debt validation procedure, the allegation that the debt is invalid, standing alone, cannot form the basis of a lawsuit alleging fraudulent or deceptive practices in connection with the collection of a debt. Likewise, a consumer alleging that a debt referenced in a collection letter is not valid, is required to follow the clear and orderly procedure set forth in the FDCPA.

*Id.* at 501.

The *Bleich* court further emphasized that:

> To allow such lawsuits would discourage use of the detailed statutory procedure. Instead, individuals would be encouraged to resort to litigation (and the prospect of an attorney's fee award) instead of being encouraged to communicate directly with the debt collector to expeditiously resolve their claim. As set forth by the court in *Lindbergh,* this court, too, "can only wonder why the plaintiff has chosen to impose the significant burden of litigation on both the defendant and this court, instead of simply following that cost-effective procedures provided by the FDCPA specifically designed to facilitate the exchange of information between debt collectors and debtors."

*Id.* (citing *Lindbergh v. Transworld Sys., Inc.*, 846 F. Supp. 175, 179 (D. Conn. 1994)).

In the case at bar, this Court should follow suit and refuse to encourage consumers "to resort to litigation (and the prospect of an attorney's fee award)" instead of exercising their statutory rights. To do otherwise would subject debt collectors to expensive litigation for attempting to collect disputed debts the debt collector had a statutory right to assume were valid. By failing to dispute the debt and instead, bringing suit, Plaintiff has denied ICS valuable protections the FDCPA provides.

For example, if Plaintiff has disputed the debt as provided for in the statute, ICS could have ceased collection and avoided any FDCPA liability. In *Jang v. A.M. Miller and Assocs.,* the plaintiff brought an FDCPA claim alleging that even though the defendant debt collector ceased collection upon a request for verification, the debt collector violated the FDCPA by attempting to collect an illegitimate debt. *Id.*, 122 F.3d 480, 483 (7th Cir. 1997). The Seventh Circuit rejected plaintiff's claim, stating: "in the real world, creditors and debt collectors make mistakes, and sometimes initiate collection activities against persons who to not owe a debt." *Id.* at 483. As such, the *Jang* court held that as long the debt collector ceases all collection efforts upon a

request for verification, no FDCPA liability would be incurred. *Id.* If Plaintiff had exercised his statutory right to request verification, ICS could have simply ceased collection efforts and avoided liability. Instead, Plaintiff failed to exercise his statutory rights—in fact, he attempted to pay the amount due in full—and now asks this Court to find ICS violated the FDCPA by attempting to collect a debt Plaintiff never disputed thereby, giving ICS the statutory right to assume was undisputed.

Like *Bleich*, in the instant case it is undisputed that ICS' collection letter contained the language required by the FDCPA that the debt would be assumed valid unless, within thirty days of receipt of the letter, Plaintiff disputed its validity. Plaintiff's First Amended Class Action Complaint fails to identify, nor could it identify, any portion of ICS' collection letter which does not comply with § 1692g(a)(1)-(5) as it mirrors the statutory language practically verbatim. *See, Smith v. Fin. Collection Agencies*, 770 F. Supp. 232, 235 (D. Del. 1991) ("Generally, a validation notice will comport with section 1692g if the 'content' of the notice complies with the literal terms of the statute."); *see also Aronson v. Com. Fin. Services, Inc.*, CIV.A. 96-2113, 1997 WL 1038818, at *3 (W.D. Pa. Dec. 22, 1997)(finding that letter seeking to collect upon time-barred debt did not violate section 1692e as "the letters properly track the language required by 15 U.S.C. § 1692g").

Moreover, also like *Bleich*, Plaintiff's FDCPA claims fail as it is undisputed that Plaintiff did not take advantage of the statutory debt validation procedure and made no attempt to contact ICS to dispute the debt. *See, Bleich* 233 F. Supp. 2d at 501; Dec. Morrison at ¶ 21.

Instead of disputing the debt, Plaintiff's attempted to satisfy the debt shortly after receiving ICS' collection letter. It is therefore reasonable to conclude Plaintiff had no intention of *ever* disputing the debt. This conclusion is supported by Plaintiff's own deposition testimony

that "as soon as I got [ICS' collection letter dated October 22, 2015], I just wanted to take care of the entire payment right then and there." *See,* DE 86-3 at p. 88. Due to alleged technical problems with ICS' website, Plaintiff made a $188.94 payment "over MD Now's website" which did not include the $37.79 collection charge because "that's all [the MD Now website] allowed [Plaintiff] to pay, there was not a free form." *Ibid.* and DE 86-3 at p. 103.

Plaintiff's failure to dispute the debt within the 30-day validation period (or at any time prior to filing suit) waives his right to claim ICS violated the FDCPA by seeking collection of an amount that was not owed.

### c. Plaintiff's FCCPA claim fails as there is no evidence ICS "knew" the debt was not owed.

Plaintiff alleges that ICS violated § 559.72(9) of the FCCPA as it "asserted a non-existent right to collect the illegitimate debt when it added the illegal 20% collection gratuity fee to the Plaintiff's past due balance" and "knowingly attempted to collect an illegitimate consumer debt because it knew that MD Now had not incurred any collection costs when it added the illegal 20% collection gratuity fee to the Plaintiff's past due balance… [and] because it regularly charges consumers percentage-based collection gratuity fees that are untethered to the actual costs of collection." *See,* DE 47 at ¶¶ 90-92.

The FCCPA provides that, in collecting debts, no person shall attempt "to enforce a debt when such person <u>knows</u>… is not legitimate, or assert the existence of some other legal right when such person <u>knows</u> the right does not exist." § 559.72(9), Fla. Stat. (emphasis added). It is well settled that "[t]o show a violation of section 559.72(9), it must be shown that a legal right that did not exist was asserted ***and*** that the person had ***actual knowledge*** that the right did not exist." *Read v. MFP, Inc.*, 85 So. 3d 1151, 1155 (Fla. 2nd DCA 2012)(emphasis added). "Section

559[.72(9)] requires by its terms *actual* knowledge." *Williams v. Streeps Music Co., Inc.,* 333 So.2d 65, 67 (Fla. 4th DCA 1976) (striking allegation that a debt collector "should have known" the debt was not legitimate); *see also, Schauer v. Morse Operations, Inc.,* 5 So. 3d 2, 5-6 (Fla. 4th DCA 2009), *reh'g denied* (Apr. 16, 2009). Accordingly, "[a] plaintiff bringing a claim under [section] 559.72(9) must plead that the defendant possessed actual knowledge that the debt is illegitimate or asserts a legal right that does not exist." *Owens v. Ronald R. Wolf & Assocs., P.L.,* No. 13-61769-CIV, 2013 WL 6085121, at *4 (S.D. Fla. Nov. 19, 2013). Furthermore, a "[p]laintiff must plead facts that show how [the defendant] had knowledge." *Reese v. JPMorgan Chase & Co.,* 686 F. Supp. 2d 1291, 1312 (S.D. Fla. 2009).

As the Court in *Reese* explained in dismissing the plaintiff's Fla. Stat. § 559.72(9) claim: "Under Florida law, the use of the word knows requires actual knowledge of the impropriety or overreach of a claim." *Id.* at 1310 – 1311 (internal citations omitted).

In the instant case, Plaintiff's attempt to claim, without any evidentiary support, that ICS "knowingly" attempted to collect an illegitimate debt (DE 47 at ¶¶ 90-92) is not enough to establish a genuine issue of material fact. *See, Reese,* 686 F. Supp. 2d at 1309-10; *see also, In re Cooper,* 253 B.R. at 290 (dismissing FCCPA counts of complaint for failure to adequately plead knowledge on behalf of the debt collector and creditor).

As is detailed *supra*, ICS relied on the representations made by MD Now as to the legality and validity of the "Collection Charge" imposed by MD Now on Plaintiff and was legally entitled to do so. *See, Pratt v. I.C. System, Inc.,* Case 0:05-cv-60678-UU at p. 10. Specifically, the contractual agreement between ICS and MD Now provided that MD Now was "**responsible for providing accurate and up-to-date account information**" to ICS and MD Now "<u>must</u>… *only* [refer] amounts… that are validly due and owing" to ICS. *See,* DE 49-4 at pp.

3-4 (emphasis in original).  Moreover, ICS provided Plaintiff with the required FDCPA notice of the procedure for a consumer to dispute the validity of the debt but Plaintiff failed follow that procedure and never contacted ICS concerning the validity of the debt until he filed his initial lawsuit in state court. *See,* Dec. Morrison at ¶ 21.

As indicated *supra,* Plaintiff's attempt to claim "actual knowledge" in support of his FCCPA claim has already been rejected in the State Court Action. Specifically, in the State Court Action, MD Now filed a Motion to Dismiss Plaintiff's claims on the basis that, *inter alia,* Plaintiff was unable to meet the "actual knowledge" element of his FCCPA claims as the contract between MD Now and Plaintiff "expressly provides… [for] the collection charge about which [Plaintiff] now complains." *See,* DE 23-3 at pp. 4-5. The court in the State Court Action granted MD Now's Motion to Dismiss. *See,* DE 23-4. Given the fact a sitting Florida Circuit Court Judge acknowledged (at the very least) the legitimacy of MD Now's argument regarding its right to impose the collection fee, it would be a legal impossibility for this Court to determine not only that the collection charge was not owed, but that ICS knew at the time the letter was sent the collection charge was not owed.

Moreover, the only evidence in the case is that ICS never formed an opinion on whether MD Now could lawfully seek the collection fee. Instead, ICS merely confirmed MD Now's contract with the Plaintiff had a collection fee provision and then, pursuant to MD Now's request, sought a collection fee commensurate with the collection fee provision in ICS' contract with MD Now. Plaintiff has not, and cannot, establish the requisite "actual knowledge" required to establish a genuine issue of material fact against ICS on the FCCPA claim. As such, ICS is entitled to summary judgment as a matter of law on Plaintiff's FCCPA claim.

**d.  Plaintiff's FDUPTA claim is fatally defective.**

### i.    *Debt collection does not fall under the purview of the FDUPTA.*

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). The term "trade or commerce" is defined as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8).

In this case, Plaintiff alleges that ICS "engaged in unfair and deceptive practices in trade or commerce" by sending Plaintiff a collection letter that "attempted to collect a 20% collection charge not owed." *See,* DE 47 at ¶¶ 97-99. However, the law in Florida is clear that "[a]n attempt to collect a debt by exercising one's legal remedies does not constitute 'advertising, soliciting, providing, offering, or distributing' as those terms are used in [the definition of 'trade or commerce' under FDUPTA]." *Acosta v. James A. Gustino, P.A.*, 6:11-CV-1266-ORL-31, 2012 WL 4052245, at *1 (M.D. Fla. Sept. 13, 2012)(Presnell, J.); *see also, Kelly v. Palmer, Reifler, & Associates, P.A.,* 681 F.Supp.2d 1356 (S.D.Fla.2010) (debt collecting law firm was not engaged in trade or commerce and firm's offers to settle and release claims in exchange for payment did not constitute soliciting or offering any article, commodity or thing of value for purposes of FDUTPA); *Trent v. Mortgage Electronic Registration Systems, Inc.,* 618 F.Supp.2d 1356 (M.D.Fla.2007)(mortgage lender's successor was not engaged in trade or commerce for purposes of FDUTPA when it sent pre-suit demand letters and foreclosed on mortgages); *Economakis v. Butler & Hosch, P.A.*, 2:13-CV-832-FTM-38DN, 2014 WL 820623, at *3 (M.D. Fla. Mar. 3,

2014)("Courts have found that a plaintiff's attempt to include pre-suit demand letters within the scope of the term 'trade or commerce' simply misses the mark.").

Simply put, debt collection activities are not "trade or commerce" for FDUPTA purposes. As a result, Plaintiff's FDUPTA claim does not present a genuine issue of material fact and ICS is entitled to summary judgment as to Plaintiff's FDUPTA claims as a matter of law.

### ii. Plaintiff's FDUPTA claim cannot be sustained absent proof of "actual damages."

"Proof of actual damages is necessary to sustain a FDUTPA claim." *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984); *Nivia v. Nationstar Mortg., LLC*, 2014 WL 4146889, at *5 (S.D. Fla. Aug. 21, 2014) (Cooke, J.) (dismissing FDUTPA claim), *aff'd on other grounds sub nom, Nivia v. Nation Star Mortg., LLC*, 620 F. App'x 822 (11th Cir. 2015). "The statute does not allow the recovery of other damages, such as consequential damages." *Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati*, 715 So. 2d 311 (Fla. 4th DCA 1998); *see also, Nazario v. Prof'l Account Servs., Inc.*, 2017 WL 1179917, at *5 (M.D. Fla. March 30, 2017).

Courts have consistently defined "actual damages" under the FDUTPA as:

> … the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties. A notable exception to the rule may exist when the product is rendered valueless as a result of the defect- then the purchase price is the appropriate measure of actual damages.

*Rollins*, 454 So. 2d at 585, *citing Raye v. Fred Oakley Motors, Inc.*, 646 S.W.2d 288, 290 (Tex.App.1983); *see also Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986 (11th Cir. 2016) (recognizing FDUTPA damages limited to "benefit of bargain" losses); *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 453 (5th Cir.2001)[5](same).

---

[5] The Eleventh Circuit Court of Appeals adopted as binding precedent all prior decisions of the former Fifth Circuit Court of Appeals issued prior to October 1, 1981. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

As Plaintiff's claims are predicated on an alleged illegitimate unpaid 20% collection charge, Plaintiff has no actual damages in the general sense and no "actual damages" as required to sustain a FDUTPA claim. As a result, ICS is entitled to summary judgment as a matter of law as Plaintiff failed to establish a genuine issue of material fact as to an essential element of a FDUPTA claim.

WHEREFORE Defendant, I.C. SYSTEM, INC., respectfully requests an Order from this Honorable Court GRANTING Defendant's Motion for Summary Judgment prejudice, dismiss the case with prejudice, and enter judgment in favor of Defendant.

Respectfully submitted by:

 /s/ Dale T. Golden
DALE T. GOLDEN, ESQ.
Florida Bar No.: 0094080
JOSEPH C. PROULX, ESQ.
Florida Bar No.: 0056830

**GOLDEN SCAZ GAGAIN, PLLC**
201 North Armenia Avenue
Tampa, Florida 33609-2303
Phone: (813) 251-5500
jproulx@gsgfirm.com
dgolden@gsgfirm.com
Counsel for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 28, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF.  I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

 /s/ Dale T. Golden

DALE T. GOLDEN, ESQ.
Florida Bar No.: 0094080