UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

FAUSTIN CORNETTE, *on behalf of*
*himself and all others similarly situated,*

    Plaintiff,

v.                                            Case No.: 1:16-cv-24454-MGC

I.C. SYSTEM, INC., and MD NOW MEDICAL
CENTERS, INC.,

    Defendants.

_____/

**DEFENDANT'S REPLY TO PLAINTIFF'S**
**RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Defendant I.C. SYSTEM, INC. ("ICS" and/or "Defendant"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, hereby files this Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment, and states the following in support thereof:

**I.**      **Argument.**

    **a. ICS had a right to rely on MD Now to determine its legal rights relative to the Plaintiff.**

Plaintiff's Response mischaracterizes ICS's right to reasonably rely on the representations by MD Now as to the amount and validity of Plaintiff's debt as "really a restated bona-fide error affirmative defense." *See,* DE 102 at p. 9.[1] Although a collector's reliance on certain information provided by a creditor may require "a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the

---

[1] ICS's Motion to Dismiss remains pending. As such, ICS has not filed an answer and affirmative defenses. As ICS has not asserted the bona fide error defense, any ruling on a *potential* bona fide error defense would be an improper advisory opinion.

maintenance of procedures reasonably adapted to avoid any such error," ICS's right to rely on MD Now to determine the amount and validity of Plaintiff's debt is distinct from the bona fide error defense. § 1692(c); *see also, Pratt v. I.C. System, Inc.,* Case 0:05-cv-60678-UU (S.D. Fla May 2006) ("It is well settled that debt collectors are entitled to rely on the information they receive from creditors and are not held strictly liable when they mistakenly attempt to collect ***amounts in excess of what is due***, if they reasonably relied on information provided by their clients.) (emphasis added). [2]

In *Pratt*, the plaintiff argued ICS violated §1692e(2)'s prohibition on the collection of "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt . . ." *Id*. ICS argued even if the "additional client charges" and 10% interest were not authorized by plaintiff's agreement with the creditor, defendant relied on the creditor's representation that these amounts were due and was therefore not liable under the FDCPA. *Id*. In that case, as in the case at bar, ICS presented evidence the creditor represented "the principal balance of the debt was $60.00 and that an 'additional client charge' of $10.00 was due." This Court granted the defendant's summary judgment on the issue wherein the Honorable Judge Ungaro aptly opined that:

> [E]ven if Plaintiff is correct that his agreement with AHHC did not provide for the additional ten dollar charge or the 10% interest, Defendant is not liable under § 1692f(1) or § 1692e(2) because there are no material facts in dispute that one AHHC informed Defendant these charges were due from Plaintiff, and two, that Defendant reasonably relied on these representations.

---

[2] A true and correct copy of the Order Granting defendant's MSJ in *Pratt v. I.C. System, Inc.*, Case 0:05-cv-60678-UU (S.D. Fla May 2006) (J. Ungaro), was attached as Exhibit "B" to Defendant's Motion for Summary Judgment. *See,* DE 87-5.

Like *Pratt*, the only evidence in this case is that MD Now represented to ICS that Plaintiff validly owed $226.73 to MD Now consisting of $188.94 in "Principal" and a $37.79 "Collection Charge." *See,* DE 87-3. Therefore, even if Plaintiff is correct that: 1) Plaintiff was only legally responsible for Collection Charges "incurred;" and 2) MD Now did not "incur" $37.79 in Collection Charges prior to referral, ICS is *still not* liable under the FDCPA as there is no evidence to refute the fact MD Now represented the amount and validity of the debt to ICS and ICS had a *right* to rely on that representation.

Moreover, as acknowledged in Plaintiff's Response, the *Pratt* Court "never addressed whether the additional charges were authorized or not." *See,* DE 102 at p. 11. That is, the Court never had to get to the issue of whether the debt was owed. Instead, since the Court held ICS was entitled to reasonably rely on the representations of the creditor, the legality of the additional charges were immaterial to the determination of whether or not the defendant violated the FDCPA. Like *Pratt*, in this case the determination of whether or not the $37.79 Collection Charge was validly assessed by MD Now is immaterial to Plaintiff's FDCPA against ICS as ICS had the right to reasonably rely on MD Now's representation that it was validly assessed.

This Court's holding in *Pratt* was in line with a litany of other federal decisions which addressed the issue and consistently held debt collectors are permitted to rely on information provided by their clients without incurring liability under the FDCPA. The rationale for these rulings has been unwavering: the FDCPA does not require debt collectors to conduct an independent investigation into the amount or validity of the underlying debt prior to collections. *See, e.g. McStay v. I.C. Sys. Inc.,* 174 F. Supp. 2d 42 (S.D. N.Y. 2001) ("A debt collector must be able to rely on representations from his client as to the amount of the debt. The FDCPA does not require debt collectors to conduct independent investigations of the information provided by

clients when collecting a debt"); *Slanina v. United Recovery Systems. L.P.,* 2011 U.S. Dist. LEXIS 121356 (M.D. Pa. 20ll) (Requiring debt collectors to investigate and verify a debt *before* collection would create an additional duty not found in the statute's plain language and would render 1692g(a)(4) superfluous); *Clark v. Capital Credit & Collection Serv.*, 460 F.3d 1162, 1177 (9th Cir. 2006) ("[I]f a debt collector reasonably relies on the debt reported by the creditor, the debt collector will not be liable for any errors.); *Jenkins v. Heintz,* 124 F.3d 824, 833-34 (7th Cir. 1997) (debt collection law firm not required to conduct an independent investigation into the legal intricacies of the client's contract); *Smith v. Transworld Sys., Inc.,* 953 F.2d 1025, 1032 (6th Cir. 1992); *Solomon v. Baer & Timberlake, P.C.*, 504 F. App'x 702, 705 (10th Cir. 2012) (Defendant could not be held liable for any alleged misrepresentations about the amount of the debt because it reasonably relied upon information from its client, which it is permitted to do.)

There is no genuine issue of material fact that ICS was legally entitled to rely on MD Now's representations as to the amount and validity of the debt and ICS is entitled to summary judgment on Plaintiff's FDCPA claim as a matter of law.

### b. Plaintiff waived his right to challenge the amount of the debt by failing to dispute the debt under § 1692g.

Plaintiff never disputed the debt with ICS. In fact, he paid the entire debt, including the collection fee, during the time the debt was being pursued by ICS. The absence of a dispute gave ICS a statutory right to "assume" the debt was "valid." *See,* § 1692g(a)(3); *see also, Palmer v. I.C. Sys., Inc.*, C-04-03237 RMW, 2005 WL 3001877, at *5 (N.D. Cal. Nov. 8, 2005).

Despite Plaintiff's argument to the contrary, this case is materially indistinct from *Bleich*. The defendant's initial collection letter in that case, like ICS's letter to Plaintiff, contained the § 1692g notice. Bleich, like Plaintiff in this case, "did not take advantage of the statutory debt

validation procedure… [and] made no attempt to contact [the debt collector] directly regarding the debt." The *Bleich* court granted summary judgment, stating: "a consumer alleging that a debt referenced in a collection letter is not valid, is required to follow the clear and orderly procedure set forth in the FDCPA." The court's reasoning was based on common sense: "[Otherwise], individuals would be encouraged to resort to litigation (and the prospect of an attorney's fee award) instead of being encouraged to communicate directly with the debt collector to expeditiously resolve their claim." *Id.,* 233 F. Supp. 2d 496, 501 (E.D.N.Y. 2002)

In his response, Plaintiff merely offers the conclusory assertion that "*Bleich* is inapplicable to the facts presented here… [because ICS] has several reasons to know that the collection fees included in [Plaintiff's] debt were not valid." *See*, DE 102 at p. 15. There are two (2) separate defects in Plaintiff's theory. First, § 1692g states unless the consumer dispute the debt within 30 days of receipt of the § 1692g notice, the debt collector will assume the debt is valid. Plaintiff seeks to add additional language not contained in the statute. That is, the Plaintiff wants the Court to read § 1692g to state: unless the consumer disputes the debt within 30 days of receipt of the § 1692g notice, the debt collector will assume the debt is valid unless the debt collector "has several reasons to know" the debt is not valid. As the Supreme Court has consistently recognized when reviewing statutory language:

> We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.

*Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (internal citations omitted)

The FDCPA states what it states unambiguously. The failure of a consumer to dispute the validity of the debt within the 30-day time period set forth in § 1692g creates in the debt

collector the <u>right</u> to assume the debt is valid. Plaintiff does not claim he exercised his dispute rights ICS. Hence, the FDCPA granted ICS an absolute right to assume the debt was valid.

Second, Plaintiff's Response fails to identify any specific "reason" ICS knew the debt was invalid. In fact, the only evidence is to the contrary. Specifically, Plaintiff's contract with MD Now allowed MD Now to charge a collection fee (DE 47-1 at p. 4); ICS confirmed that Plaintiff's contract with MD Now allowed for collection fees of an amount equal to or greater than the amount sought (DE 103-1 at p. 8); MD Now made at least 3 attempts to collect the past-due debt of Plaintiff prior to referring the account to ICS (DE 101-3 at pp. 3-4); and when the account was referred to ICS for collections MD Now represented that Plaintiff's debt included a $37.79 Collection Charge. *See,* DE 87-3.

Accordingly, Plaintiff's failure to dispute the debt within the 30-day validation period (or at any time prior to filing suit) waives his right to claim ICS violated the FDCPA by seeking collection of an amount that was not owed. ICS is therefore, entitled to summary judgment on Plaintiff's FDCPA claims.

### c. Plaintiff's FCCPA claim fails as there is no evidence ICS "knew" the debt was not owed.

Plaintiff's Response includes a litany of convoluted attempts to establish that ICS "knew the collection charges were not valid, and collected them anyway." *See,* DE 102 at p. 15. As will be demonstrated below, each of Plaintiff's attempts to establish ICS had actual knowledge fails.

#### i. ICS reviewing the contract between MD Now and Plaintiff does not establish actual knowledge the Collection Charge was illegitimate.

To be sure, as of the date this brief was filed the only court to rule on the legitimacy of the collection fee sided with MD Now. Nonetheless, Plaintiff argues ICS "knew the collection fees were not authorized by the contract" because ICS "required that MD Now provide it with a

copy of its patient contracts… [and] reviewed the contract… [to] determin[e] whether it allowed collection fees." *Ibid.* at p. 16. As detailed *supra*, Plaintiff's argument is fatally flawed.

> ii. *ICS's involvement in past unrelated lawsuits does not establish actual knowledge the Collection Charge was illegitimate.*

Plaintiff's Response purports that ICS had actual knowledge that the Collection Charge in this case was not valid because ICS was also the defendant in *Pratt v. I.C. System* and *Owen v. I.C. System*. *Ibid.* at p. 16. Specifically, Plaintiff alleges that ICS's involvement in past litigation somehow establishes "a pattern of [ICS] collecting accounts not validly owed, and when challenged, claiming it bears no responsibility because it knows nothing." *Ibid.* However, Plaintiff's Response does not provide any further insight into how ICS's involvement as a defendant in two unrelated cases, involving different creditors, different plaintiffs, and different accounts has any bearing on whether ICS had actual knowledge that the Collection Charge levied by MD Now was not valid. Notably, page 16 of Plaintiff's Response alleges that "*Pratt*… shows a pattern of [ICS] collecting amounts that are not validly owed" yet on page 11 of Plaintiff's Response he acknowledges that "the [*Pratt*] court never addressed whether the additional charges were authorized or not." *Ibid.* at pp. 11; 16.

Plaintiff further alleges that ICS had "actual knowledge of its wrongdoing" because ICS "had already been sued, and had a judgment entered against it for the same conduct" in *Acik v. I.C. Sys., Inc.*, 640 F. Supp. 2d 1019, 1021 (N.D. Ill. 2009). Once again, Plaintiff relies on a decision from another district court in a separate case involving a different creditor and different collection fee clause in the creditor's contract with its customer to try to prove ICS had actual knowledge that MD Now's contract did not lawfully permit the imposition of a collection fee. In *Acik,* the plaintiff's contract with his doctor contained a provision making him "responsible for all costs and fees, including attorney fees, and interest incurred from the date of my initial

consultation with any physician." *Id.* The *Acik* court found that the plaintiff's contract "could be interpreted to include collection fees since collection fees would be incurred after the initial consultations, but such a conclusion is made by inference only; it is not expressly provided." *Id.*

In the instant case, ICS is not requesting the Court "infer" MD Now's contract permits a "percentage collection fee;" the contract specifically contains a percentage collection fee provision. *See,* DE 47 at ¶ 36.

> *iii. Florida contract law does not establish actual knowledge the Collection Charge was illegitimate.*

Plaintiff's Response makes the unusual argument that "[e]ven if [ICS] *did not have* actual knowledge that the fees were invalid," this Court could still find ICS *had* actual knowledge because under Florida contract law "parties to a contract… will be conclusively presumed to know and understand the contents, terms, and conditions of the contract." *See,* DE 102 at p. 16 (citing *Rocky Creek Ret. Props., Inc. v. Estate of Fox*, 19 So.3d 1105, 1108–09 (Fla. 2d DCA 2009) (emphasis added).

Initially, the Plaintiff's premise that the Court can find ICS had "actual knowledge" even if ICS had "no actual knowledge" makes not an ounce of sense. ICS either had "actual knowledge" or it did not, period. Here, there is no evidence of actual knowledge.

Moreover, ICS was not a "part[y] to [Plaintiff's MD Now] contract." So, the *Rocky Creek* case has no relevance to Plaintiff's claims against ICS.

To be sure, it is well settled "[t]o show a violation of section 559.72(9), it must be shown that a legal right that did not exist was asserted **and** that the person had ***actual knowledge*** that the right did not exist." *Read v. MFP, Inc.*, 85 So. 3d 1151, 1155 (Fla. 2nd DCA 2012)(emphasis added). As such, Plaintiff's attempt to establish the requisite actual knowledge "[e]ven if" ICS did not have actual knowledge, fails on its face.

8 | P a g e

> *iv. ICS's alleged "standard business practice" does not establish actual knowledge the Collection Charge was illegitimate.*

Plaintiff asserts that ICS's "standard business practice involved collection of unauthorized percentage-based fees… [therefore, ICS] knew the amounts they were collecting bore no relation to the work performed or the actual cost of collection." *See,* DE 102 at p. 17. Plaintiff attempts to establish that the collection fees sought from Plaintiff and the putative class were collected by ICS "on a percentage basis, rather than collecting actual costs incurred" by citing to deposition testimony confirming that ICS did not increase the collection charges regardless of the extent of ICS's collection attempts. *Ibid.* Specifically, Plaintiff purports the deposition testimony of ICS's corporate representative Christopher A. Morris confirms that ICS "repeatedly included percentage-based collection charges in MD Now debts… regardless of the collection efforts, number of letters sent or phone calls made." *See,* DE 102 at p. 17.

Contrary to Plaintiff's assertions, the only evidence is that the collection charge does not change based on ICS's collection efforts because the "principal balance and the collection charge" are included in the "Excel files that MD Now provides [ICS] when they send [ICS] accounts." *See,* DE 103-1 at p. 14. ICS would never change the amount based on its collection costs as ICS "didn't make the determination… of what amount [MD Now] would assess" for the collection charge. *Ibid.*

> *v. The State Court Order granting MD Now's Motion to Dismiss is fatal to Plaintiff's FCCPA claim.*

Plaintiff's attempt to claim "actual knowledge" that the Collection Charge was invalid has already been rejected by the State Court rendering Plaintiff's FCCPA a legal impossibility. Specifically, the State Court's Order granting MD Now's Motion to Dismiss in Plaintiff's prior

State Court Action precludes Plaintiff from claiming in this matter that ICS knew the collection fee was unlawful.

In his response, Plaintiff argues that the State Court's "two sentence dismissal order never even mentioned the actual knowledge issue or [ICS] for that matter." *See,* DE 102 at p. 19. However, the Circuit Court's Order granting MD Now's Motion to Dismiss was explicitly based on "the record, the parties' filings, and arguments of counsel." *See,* DE 103-12. Since MD Now's Motion to Dismiss was granted in full, MD Now's legal arguments in its motion are incorporated into the Order. To that end, MD Now's Motion to Dismiss argued Plaintiff was unable to meet the "actual knowledge" element of his FCCPA claims as the contract between MD Now and Plaintiff "expressly provides… [for] the collection charge about which [Plaintiff] now complains." *See*, DE 23-3 at pp. 4-5.

Accordingly, a sitting Florida Circuit Court Judge acknowledged (at the very least) the legitimacy of MD Now's argument regarding its right to impose the collection fee. It would therefore be a legal impossibility for this Court to determine not only that the collection charge was not owed, but that ICS *knew* at the time the letter was sent the collection charge was not owed.

### d. ICS's debt collection directed at Plaintiff does not fall under the purview of the FDUPTA.

FDUTPA defines "trade or commerce" as the "advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8). In its Motion, ICS provided the Court with several cases all which hold debt collection is not a "trade of commerce" as defined by the FDUTPA. In his Response, Plaintiff argues debt collection is "trade or commerce" under the FDUPTA "when it

involves the collection of amounts severed from the exercise of a legal remedy, or when it involves the use of unfair or harassing collection practices." *See,* DE 102 at p. 21. In a feat of lingual gymnastics, Plaintiff attempts to characterize the collection fee at issue as a "service" which is "separate and additional" to the "amounts owed to MD Now for medical services" and therefore "brings it within the definition of trade or commerce under FDUPTA." *Ibid.* at pp. 21-22. Apparently in Plaintiff's mind, ICS was doing him a "service" by trying to collect from him a debt he now claims included an unlawful collection fee.

In support of his theory, Plaintiff relies on cases that are either factually distinct or otherwise unhelpful. *Martorella*, like *Alhassid* and *Schauer*, involved a situation in which the defendant was the lender or loan servicer and therefore, "had a direct financial relationship with plaintiff." *See, Martorella v. Deutsche Bank Nat. Tr. Co.*, *Id.* 161 F. Supp. 3d 1209, 1220 (S.D. Fla. 2015), adhered to on reconsideration, 12-80372-CIV, 2015 WL 10857441 (S.D. Fla. Nov. 9, 2015 931 F. Supp. 2d 1218 (S.D. Fla. 2013). In each case, the court relied heavily on that relationship to support its conclusion the FDUTPA applied. No such relationship exists in this case.

In *Martorella* Judge Marra determined "[t]he conduct challenged in the Complaint is Defendants' provision of insurance (a product)… [therefore] the transactions at issue fall comfortably within the definition of trade or commerce because it is alleged Martorella was the 'purchaser' of insurance that Defendant's 'provided, offered, or distributed.'" *Id.* (internal citations omitted).

In *Alhassid v. Bank of Am.,* Judge Bloom intentionally side-stepped the issue of whether debt collection fell under the purview of the FDUTPA and instead, focused on plaintiffs' claims defendant billed them for specific services that were never performed. *Id.*, 60 F. Supp. 3d 1302,

1324 (S.D. Fla. 2014). Specifically, Judge Bloom found the activities of "property preservation, property inspections, and property appraisals… can be construed as the separate offer or provision of services [to plaintiff] within the meaning of FDUPTA." *Id.* On that basis, the court found that "certain of the unauthorized activities complained on in… here come within the scope of FDUPTA… Plaintiffs' FDUPTA claim therefore survives Nationstar's Motion to Dismiss." *Id.* Importantly, Judge Bloom noted if the plaintiffs had limited their allegations to "loan collection activities, ***even if those activities were improper***, [the] FDUPTA would not apply." *Id.* at 1323 (emphasis added).

*Schauer* was in front of a Florida appellate court after the trial court granted a motion to dismiss. The opinion contains nothing approaching a significant legal analysis of the issue before this Court. Instead, the court simply held plaintiff "alleged sufficient facts to show GMAC violated this Act by willfully harassing him and his family with respect to the collection of its debt, this cause of action should have survived dismissal." *Id.*, 819 So. 2d 809, 812 (Fla. 4th DCA 2002), reh'g denied, clarification granted (June 26, 2002). GMAC was the lender on the car loan at issue in *Schauer* and therefore had a financial relationship with the plaintiff.

ICS did not extend credit to Plaintiff nor perform any financial services for Plaintiff. It tried to collect a debt MD Now claimed Plaintiff owed. *Martorella*, *Alhassid*, and *Schauer* do not provide support for Plaintiff's FDUTPA claims against ICS.

*Losure,* like *Schauer,* contains no analysis of the issue before this Court, i.e. whether "debt collection by the third-party debt collector is 'trade or commerce' and falls under the purview of the FDUTPA." The lack of analysis makes sense as defendant never even argued debt collection was not "trade or commerce" as defined by the FDUTPA. *See,* **EXHIBIT A**. It is

therefore, apocryphal for the Plaintiff to claim the *Losure* opinion supports his claim that debt collection is "trade or commerce" as defined by the FDUTPA.

When faced with the specific argument that debt collection is not "trade or commerce" as defined by the FDUTPA, Florida courts have consistently drawn a line between pure debt collection and other activities related to loan servicing. *See, e.g. Bank of Am., N.A. v. Zaskey*, 9:15-CV-81325, 2016 WL 2897410, at *11 (S.D. Fla. May 18, 2016) (to the extent the Zaskeys' FDUTPA claim is based on the force-placement of insurance on the property, Green Tree's motion to dismiss is denied. To the extent the Zaskeys' FDUTPA claim is based on other behavior, the Court finds that this is debt collection activity not actionable under FDUTPA, and Green Tree's motion to dismiss is granted.); *see also, Williams v. Nationwide Credit, Inc.*, 890 F. Supp. 2d 1319, 1322 (S.D. Fla. 2012) ("[T]he Court agrees with the other courts that have addressed debt collection and finds that Nationwide's debt collection activities do not give rise to a FDUTPA claim."); *Owens-Benniefield v. Nationstar Mortgage LLC*, 8:17-CV-540-T-33TGW, 2017 WL 3149429, at *7 (M.D. Fla. July 25, 2017) ("[Plaintiff] alleges Nationstar's conduct was 'trade or commerce' because Nationstar 'attempt[ed] ... to collect an alleged obligation from [her]' and 'attempt[ed] to collect an amount greater than what was owed.' But such attempts to collect a debt do not constitute 'trade or commerce.'")

ICS's debt collection directed at Plaintiff was not "trade or commerce" as defined by the FDUPTA. Plaintiff's FDUPTA claim does not present a genuine issue of material fact, and ICS is entitled to summary judgment as to Plaintiff's FDUPTA claims as a matter of law.

WHEREFORE Defendant, I.C. SYSTEM, INC., respectfully requests an Order from this Honorable Court GRANTING Defendant's Motion for Summary Judgment prejudice, dismiss the case with prejudice, and enter judgment in favor of Defendant.

Respectfully submitted by:

 /s/ Dale T. Golden
DALE T. GOLDEN, ESQ.
Florida Bar No.: 0094080
JOSEPH C. PROULX, ESQ.
Florida Bar No.: 0056830
**GOLDEN SCAZ GAGAIN, PLLC**
201 North Armenia Avenue
Tampa, Florida 33609-2303
Phone: (813) 251-5500
jproulx@gsgfirm.com
dgolden@gsgfirm.com
Counsel for Defendant I.C. System, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 1, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF.  I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

 /s/ Dale T. Golden
DALE T. GOLDEN, ESQ.
Florida Bar No.: 0094080