UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-24454-Civ-COOKE/TORRES

FAUSTIN CORNETTE,

    Plaintiff,

vs.

I.C. SYSTEM, INC. and M.D. NOW
MEDICAL CENTERS, INC.,

    Defendants.
_____/

## OMNIBUS ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER is before me on the Defendant I.C. System, Inc.'s ("ICS") Motion for Summary Judgment (ECF No. 87), Defendant MD Now's ("MD Now") Motion for Summary Judgment (ECF No. 89), and Plaintiff Faustin Cornette's ("Plaintiff") Motion for Partial Summary Judgment (ECF No. 92). All parties have filed responses and replies, as well as Statements of Undisputed Facts in support of their motions. The matter is now ripe for review.

### I. BACKGROUND

This case arises out of a $37.79 collection charge added to Plaintiff's account as a result of unpaid medical costs.[1] MD Now contracts with ICS to collect unpaid debt from consumers in Florida on its behalf. ICS' Statement of Material Facts ("ICS' SMF"), ECF No. 88, ¶ 25. The relationship between ICS and MD Now is governed by the Premier Collect Agreement dated September 3, 2013. ICS' SMF, ¶ 26. The Premier Collect Agreement states "[MD Now's] fees include the non-refundable service fee of $0 plus $0 (applicable state tax) for a total of $0 and the highest applicable fee specified below on all amounts realized after placement." ECF No. 49-4, p. 2. According to the Agreement, MD Now is responsible for a

---

[1] Pursuant to subsection (b) of Local Rule 56.1 regarding Motions for Summary Judgment, all material facts set forth in the movant's statement will be deemed admitted unless controverted by the opposing party's statement, provided that the movant's statement is supported by evidence in the record. The following facts are taken from the parties' Statements of Material Facts, where uncontested or admitted, and the record.

1

fee of 20% of "all amounts realized" on balances of $150.01 or more. *Id.* Attached to the Premier Collect Agreement is the "Patient Contract," which governs the relationship between MD Now and its clients. ECF No. 47-1. The Patient Contract states, "If my balance is not paid after 60 days, the information necessary for collection purposes will be forwarded to a professional collection agency," and "Further, in the event collection action is required to be initiated by MD Now, I hereby guarantee payment of all attorney's fees, court costs and collection charges incurred up to 40% of the outstanding principal." ECF No. 47-1, p. 4, ¶ 5. ICS reviewed the Patient Contract to ensure it allowed for collection fees to be assessed. Morris Depo., 78:14–24. MD Now believes it incurs the 20% charge at the moment it refers an account to ICS. MD Now's Statement of Material Facts, ("MD Now's SMF"), ECF No. 90, ¶ 15.

On March 25, 2015, Plaintiff received medical treatment at a facility owned by MD Now. MD Now's SMF, ¶ 7. Prior to receiving medical care, Plaintiff signed a "Patient Contract" with MD Now. MD Now's SMF, ¶ 8. On or about June 3, 2015, MD Now sent Plaintiff a Statement seeking payment for medical costs totaling $188.94. ECF No. 47-3. By October 2015, Plaintiff still had not paid his bill. MD Now's SMF, ¶ 9. On October 19, 2015, MD Now referred Plaintiff's account to ICS for collection. MD Now's SMF, ¶ 10. The total amount referred was $226.73, which consisted of $188.94 in "Principal" and a $37.79 "Collection Charge." ICS' SMF, ¶ 16.

ICS sent Plaintiff a letter dated October 22, 2015, which showed the Principal Due of $188.94 and a Collection Charge Due of $37.79. ECF No. 47-4. After receiving ICS' letter, Plaintiff paid the full amount shown on the MD Now website but did not pay the collection charge. MD Now's SMF, ¶ 19. MD Now paid ICS $37.79, the amount of the collection charge, after Plaintiff paid his medical bill to MD Now. MD Now's SMF, ¶ 22. ICS was notified on October 30, 2015 that a payment was received on Plaintiff's account and ICS stopped all collection efforts. ICS' SMF, ¶ 24. Plaintiff never disputed the debt with ICS prior to filing suit in state court on December 16, 2015. ICS' SMF, ¶ 21.

Plaintiff filed a complaint against MD Now and ICS in the Circuit Court of Palm Beach County, Florida alleging violations of the Florida Consumer Collection Practices Act ("FCCPA") and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") on the same facts described above. ICS' SMF, ¶¶ 1–2. MD Now filed a motion to dismiss the state

court complaint, arguing Plaintiff could not meet the "knowledge" requirement under the FCCPA. ICS SMF, ¶ 3; ECF No. 49-2. After oral arguments, the state court granted MD Now's motion to dismiss without prejudice. ICS' SMF, ¶ 4; ECF No. 49-3. Plaintiff then filed the instant action on October 21, 2016. An ICS "Debt Detail" dated February 22, 2017 showed Plaintiff had a current balance of $37.79. ECF No. 105-11.

## II.    LEGAL STANDARD

Summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotations omitted); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir. 1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.,* 894 F.2d 1555, 1558 (11th Cir. 1990).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986) (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Likewise, a dispute about a material fact is a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"For factual issues to be considered genuine, they must have a real basis in the record...mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England,* 432 F.3d 1321, 1326 (11th Cir. 2005) (citations omitted). The moving party "always bears the initial responsibility of informing

the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

### A. Fair Debt Collection Practices Act ("FDCPA")

Plaintiff brings two FDCPA claims against ICS pursuant to 15 U.S.C. §§ 1692e(2)(A) and 1692f(1). Plaintiff and ICS each maintain they are entitled to summary judgment on both FDCPA claims. After a careful review of the record and the relevant legal authorities, ICS is entitled to judgment as a matter of law.

#### a. The 20% collection charge violated the FDCPA.

Pursuant to 15 U.S.C. § 1692e(2)(A), a debt collector is prohibited from using any false, deceptive, or misleading representation in connection with the collection of a debt, specifically including the false representation of the character, amount or legal status of any debt. 15 U.S.C. § 1692f(1) prohibits a debt collector from using unfair or unconscionable means to collect a debt, including collecting any amount, interest, fee, charge, or expense incidental to the principal obligation, unless expressly authorized by the agreement creating the debt. To prevail on an FDCPA claim, a plaintiff must prove three elements. "First, the plaintiff must have been the object of a collection activity arising from consumer debt. Second, the defendant must be a debt collector as defined by the FDCPA. Third, the defendant must have engaged in an act or omission prohibited by the FDCPA." *Erickson v. Gen. Elec. Co.*, 854 F. Supp. 2d 1178, 1182 (M.D. Fla. 2012) (internal citations omitted). There is no dispute that the first two elements have been met; I must therefore determine whether ICS engaged in an act or omission prohibited by the FDCPA.

The Eleventh Circuit addressed an almost identical factual situation in *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606 (11th Cir. 2014). In *Bradley*, the plaintiff received medical services for which he did not pay. *Id.* at 609. The medical provider referred his

account to a collection agency, and in doing so added a fee of 33.33%. *Id.* The contract between the plaintiff and the medical provider stated the plaintiff would pay for "all costs of collection." *Id.* The Eleventh Circuit interpreted the contract to obligate plaintiff only for the "actual" costs of collection. *Id.*, at 610. Because the 33.33% fee bore no correlation to the actual costs of collection, the fee was not expressly agreed to by plaintiff and violated the FDCPA. *Id.* According to the court, percentage-based fees are not *per se* violations of the FDCPA; the agreement just needs expressly to allow for it. *Id.* Similarly, in a case against a mortgage loan servicer, the Eleventh Circuit held that estimated fees violated both §§ 1692(e)(2) and 1692f(1) where the contract language only allowed for "incurred" or "disbursed" fees. *Prescott v. Seterus, Inc.*, 635 F. App'x 640, 633–44 (11th Cir. 2015) (hereinafter "*Prescott I*").

The contract at issue here required Plaintiff to pay "all attorney's fees, court costs and collection charges incurred up to 40%." ECF No. 47-1, p. 4, ¶ 5. Plaintiff argues that the 20% charge MD Now added to his outstanding balance is simply a percentage-based fee and was not expressly agreed to by Plaintiff in the agreement.[2] ICS does not contest the inappropriateness under the FDCPA of the collection charge as calculated by MD Now. MD Now, however, argues that the 20% fee *is* MD Now's actual cost because, based on the Premier Collect Agreement, it incurred the 20% fee at the time it sent Plaintiff's account to ICS for collection.[3] In addition, MD Now contends that the Patient Contract allows for the collection of percentage-based fees so long as they do not exceed 40%. Both sides' arguments hinge almost entirely on the word "incurred."

---

[2] Plaintiff also argues that the "least-sophisticated consumer" standard should be utilized to govern the interpretation of the contract between MD Now and Plaintiff. While it is true that the "least-sophisticated consumer" standard is used "to evaluate whether a debt collector's communication violates § 1692e of the FDCPA," *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193 (11th Cir. 2010), MD Now is not a debt collector. The least-sophisticated consumer standard does not apply to Plaintiff's contract with MD Now. *See Bradley*, 739 F.3d at 606 (examining the contractual language without applying the least-sophisticated consumer standard).

[3] MD Now does not specifically argue that its collection charge is appropriate under the FDCPA, as MD Now is not subject to Plaintiff's FDCPA claims. However, MD Now strenuously argues its collection charge is proper under its Patient Contract and the FCCPA. MD Now's contractual interpretation arguments can be applied in the FDCPA context.

5

The Patient contract states, "I hereby guarantee payment of all attorney's fees, court costs and collection charges incurred up to 40% of the outstanding principal." ECF No. 47-1, p. 4, ¶ 5. The Premier Collect Agreement states in pertinent part: "[MD Now's] fees include the non-refundable service fee of $0 plus $0 (applicable state tax) for a total of $0 and the highest applicable fee specified below on all amounts realized after placement." ECF No. 49-4, p. 2. According to the Agreement, MD Now is responsible for a fee of 20% of "all amounts realized" on balances of $150.01 or more. *Id.* A plain reading of the agreement would lead the reader to understand that MD Now is only liable to ICS once a payment is collected, and only for a percentage of the actual balance collected. Such a reading is consistent with ICS' interpretation of the agreement. According to Christopher Morris, the corporate designee for ICS, "realized" is synonymous with "collected." Morris Depo, 43:4–15. If the charge is never collected, MD Now never owes any money to ICS. Similarly, if less than the outstanding balance is collected, then MD Now owes a lesser total amount to ICS. This makes the 20% fee either a percentage based fee or an estimated fee, both of which the Eleventh Circuit held to be inconsistent with "actual costs" and the word "incurred" in the FDCPA context. *See Prescott I*, 635 F. App'x at 644; *Bradley*, 739 F.3d at 609. "[T]he most natural reading is that [the debt collector] was not authorized to collect fees for not-yet-performed legal services and expenses." *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 175 (3d Cir. 2015).

While both courts in *Prescott I* and *Kaymark* applied the "least-sophisticated consumer" standard to the relevant contracts in contrast to *Bradley*, in the instant case, with or without the least-sophisticated consumer standard, the plain reading of the past-tense "incurred" would lead a consumer to believe that the charge had already been assessed in some definite type of manner, even if payment was to occur in the future. "[A] contingency promise to pay has been incurred when the contingency upon which the payment depends occurs." *Stuyvesant Ins. Co. of N. Y. v. Nardelli*, 286 F.2d 600, 603 (5th Cir. 1961); *see also Reliance Mut. Life Ins. Co. of Ill. v. Booher*, 166 So. 2d 222, 224 (Fla. Dist. Ct. App. 1964) ("The plaintiff's engagement of the services of the surgeon for his future services constituted a contingent promise to pay for his services, and the expense was not incurred until the contingency occurred, which was the surgeon's performance of the services."). The

contingency in this case would be Plaintiff paying his account either to ICS or MD Now, which had not occurred at the time ICS sent its collection letter.

MD Now relies on *In re Tanner Family, LLC*, 556 F.3d 1194, 1196 (11th Cir. 2009) for the proposition that "a debtor incurs a debt to a creditor when the creditor has a claim against the debtor, *even if the claim is unliquidated, unmatured, unfixed, or contingent.*" *In re Tanner Family, LLC*, 556 F.3d 1194, 1196 (11th Cir. 2009) (emphasis in original). However, in addition to the fact that *In re Tanner* specifically deals with "debt" as defined in the bankruptcy code, the case is about an obligation to pay rent on a lease. *Id.* While the court held that "[a]t the moment the lease was signed, Midwest had an unmatured claim against Debtor to receive monthly rental payments for the duration of the five-year term . . .," the length of the contract and amount of the payment were definite at the time the lease was signed, in stark contrast to the Premier Collect Agreement. *Id.* Had the renter not paid his rent, he would have been in breach of the contract. That is simply not the case here. MD Now's obligation to pay the 20% charge only arose *if* Plaintiff paid his past due bill, and even then the 20% would only apply to the amount paid, which could have been less than the total owed. *In re Tanner* is therefore inapposite.

Even if *In re Tanner* were applicable, it would merely create an ambiguity in the contract. "In general, ambiguities in contracts are construed against their drafters." *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1546 (11th Cir. 1996) (citing *Hurt v. Leatherby Ins. Co.*, 380 So.2d 432, 434 (Fla. 1980). If MD Now had wanted to charge a percentage fee or charge estimated fees, it could easily have drafted its agreement to allow for such costs; however, it did not. *See Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 610 (11th Cir. 2014) ("It is the nature of the agreement between [the plaintiff] and [the medical provider], not simply the amount of the fee that is important here.") Because ICS attempted to collect a debt that was not authorized by the agreement between Plaintiff and MD Now, ICS violated § 1692e(2)(A) by misrepresenting the legal status of a debt and § 1692f(1) by collecting a debt that was not expressly authorized by the agreement creating the debt.

### b. ICS had a right to rely on MD Now's representations of Plaintiff's debt.

As noted above, ICS does not expressly contest whether or not the collection charge violated the FDCPA. However, ICS contends that even if the charge does violate the

FDCPA, ICS is still not liable under the FDCPA because it had a right to rely on MD Now's representations of Plaintiff's debt.

Nowhere in the FDCPA does the statute specifically require a debt collector to validate a debt prior to seeking collection of such debt. In fact, § 1692g(a)(3) specifically allows a debt collector to assume a debt to be valid if not disputed by the consumer within thirty days of receiving such notice. A reading of the FDCPA that requires pre-collection investigation would therefore render § 1692g(a)(3) superfluous, especially as applied to the first communication between a debt collector and consumer. The Eleventh Circuit has not directly addressed the issue, and has gone so far as to say, "The FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010). However, this is not a resounding endorsement of strict liability, and was simply dicta regarding the background of the FDCPA statute. While some courts have interpreted the FDCPA to impose strict liability on the debt collector for seeking collection of amounts not rightfully owed, *see Hepson v. J.C. Christenson and Associates, Inc.*, 2008 WL 4833097, *3 (M.D. Fla. Nov. 5, 2008) (citing *Clark v. Capital Credit & Collection Servs., Inc.* 460 F.3d 1162, 1175 (9th Cir. 2006), such an interpretation is far from universal. Many others have found that "debt collectors are entitled to rely on the information they receive from the creditor. They are not held strictly liable when they mistakenly attempt to collect amounts in excess of what is due, if they reasonably relied on information provided by their clients." *In re Cooper*, 253 B.R. 286, 292 (Bankr. N.D. Fla. 2000) (citing *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992); *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1140–41 (N.D. Ill. 1998); *Ducrest v. Alco Collections, Inc.*, 931 F. Supp. 459, 462 (M.D. La. 1996)); *see also Solomon v. Baer & Timberlake, P.C.*, 504 Fed. App'x 702, 704 (10th Cir. 2012) (citing *Clark*, 460 F.3d at 1175).

In a factually similar case against ICS in this district, the court found that ICS was entitled to rely on the representations of the creditor even assuming the charges at issue were not authorized by the plaintiff's agreement with the creditor. *Pratt v. IC System, Inc.*, 05-60678-CIV-Ungaro, ECF No. 50, p. 10 (May 9, 2006). ICS only charged the plaintiff what the creditor represented was due and the court found its reliance was reasonable. Plaintiff claims that the *Pratt* lawsuit put ICS on notice that it needed to check the agreements

between consumers and their creditors prior to collecting a debt and that *Pratt* is also inapplicable because there is no suggestion that ICS had in its possession and reviewed the contract between the plaintiff and creditor. However, *Pratt* did not require ICS to review the contract; in fact, it explicitly held otherwise.

Plaintiff also argues that because ICS possessed a copy of the Premier Collect Agreement and reviewed it, it should have known it was collecting fees not authorized by the Agreement. However, neither *Pratt* nor the FDCPA "require[s] the debt collector to dispute the creditor's construction of a contract." *Ducrest v. Alco Collections, Inc.*, 931 F. Supp. 459, 462 (M.D. La. 1996). In addition, it requires an extra step over and above reading the Patient Contract for ICS to conclude that the collection charge, which was calculated by MD Now rather than ICS, was based on the Premier Collect Agreement.

In another case involving ICS as the defendant, the plaintiff argued ICS violated the FDCPA by attempting to collect a 12% interest charge, which was above the 9% interest rate allowed by New York statute. *McStay v. IC Sys., Inc.*, 174 F. Supp. 2d 42, 47 (S.D.N.Y. 2001), *aff'd*, 308 F.3d 188 (2d Cir. 2002). Despite the usury law being publicly and readily available for ICS to review (at least as available as the Agreement in the instant case), the court found that ICS was allowed to rely on the representations from its clients, stating "[a] debt collector must be able to rely on representations from his client as to the amount of the debt. The FDCPA does not require debt collectors to conduct independent investigations of the information provided by clients when collecting a debt." *McStay*, 174 F. Supp. 2d at 47.

Lastly, Plaintiff argues that ICS's reasonable reliance argument is essentially a bona-fide error argument in disguise and that ICS cannot meet the three prongs of the affirmative defense. ECF No. 102, p. 3. However, as ICS notes, it has not yet asserted the bona-fide error defense and its reliance argument is distinct. Based on the plain language of the FDCPA and the accompanying cases, I agree. At least for the initial communication with the consumer, ICS is entitled to rely on the representations of its clients with respect to consumer debts without the need to conduct a pre-collection investigation.[4]

---

[4] Because ICS was entitled to rely on the representations from MD Now, I do not address ICS' argument that Plaintiff waived his right to sue under the FDCPA by not disputing the debt with ICS before filing suit.

9

## B. Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.72(9)

Plaintiff asserts FCCPA claims against both ICS and MD Now. The FCCPA generally prohibits debt collection agencies and corporations from claiming, attempting, or threatening to enforce a debt where such person knows the right does not exist. Fla. Stat. § 559.72; *Cook v. Blazer Fin.Servs., Inc.*, 332 So. 2d 677, 679 (Fla. Dist. Ct. App. 2002). To show a violation of section 559.72(9), "it must be shown that a legal right that did not exist was asserted and that the person had actual knowledge that the right did not exist." *Read v. MFP, Inc.*, 85 So. 3d 1151, 1155 (Fla. Dist. Ct. App. 2012) (quoting *Pollock v. Bay Area Credit Serv., LLC,* 2009 WL 2475167, at *9 (S.D. Fla. Aug.13, 2009)). Under Florida law, "the use of the word 'knows' requires actual knowledge of the impropriety or overreach of a claim." *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1312 (S.D. Fla. 2009). "The statute does not provide for recovery if the creditor merely should have known the debt was not legitimate." *Schauer v. Morse Operations, Inc.*, 5 So. 3d 2, 6 (Fla. Dist. Ct. App. 2009).

Both ICS and MD Now assert Plaintiff's FCCPA claim must fail because neither had actual knowledge that the collection charge violated the Patient Contract. Plaintiff argues that both Defendants had actual knowledge because each Defendant had knowledge of the terms of the Patient Contract and because Defendants had a practice of collecting such a fee. However, Plaintiff's arguments essentially amount to the argument that Defendants *should* have known the fee was improper. Whether or not this is true, Defendants have shown they did not possess actual knowledge.

In *Prescott v. Seterus, Inc.*, 684 Fed. App'x 947 (11th Cir. 2017) (hereinafter *Prescott II*), the Eleventh Circuit found that an incorrect contract interpretation could mean that a company did not possess actual knowledge as required under the FCCPA. In *Prescott II*, the court stated,

> A reasonable jury could read this contract, conclude that any reasonable lender reading the contract would have known that it could not charge estimated fees, and infer that Seterus had actual knowledge based on that conclusion. There is other evidence in the record—such as the deposition testimony of Seterus' corporate representative under Rule 30(b)(6) of the Federal Rules of Civil Procedure—that could lead to the opposite conclusion.

*Prescott II*, 684 F. App'x at 949. The court had previously concluded in *Prescott I* that the language in the contract governing the debt between Seterus and the plaintiff did not

10

provide for the estimated fees Seterus had attempted to collect. *Prescott II*, 684 F. App'x at 948. While the court went on to find that summary judgment was not appropriate on the record in that case, Plaintiff has not raised a genuine issue of material fact that Defendants possessed actual knowledge in the instant case.

The corporate representative deposition testimony of both ICS and MD Now show that neither Defendant interpreted the contract to disallow the collection fee charged. *See* Morris Depo., 77:1–78:24, ECF No. 92-1; Lamelas Depo., 27:25–28:18, ECF No. 90-2. ICS looked at MD Now's contract with its clients and saw that it allowed collection charges; it therefore determined that it was proper to include the charge MD Now calculated and added to Plaintiff's account. Morris Depo., 77:1–78:24. As ICS' corporate representative testified, ICS did not know that the fees were based on the Agreement. Morris Depo., 77:9–78:2. Even taking these facts in the light most favorable to Plaintiff, there is no inference to be drawn that ICS knew MD Now calculated the collection charges based on the Premier Collect Agreement, or knew that such a calculation was improper.

With respect to MD Now, MD Now considered the collection charge to be appropriate because it considered ICS' fee to be incurred at the moment the account was referred to ICS; whether ICS collected the money or MD Now collected the money, MD Now had to pay ICS. Lamelas Depo., 27:25–28:18. Clearly, both Defendants thought they were operating under contracts that allowed the collection of the charge they assessed. Further supporting Defendants' position, the state court judge in the prior state lawsuit granted MD Now's motion to dismiss without prejudice. *See* ECF No. 49-3. While the court did not issue a long order, the court granted the motion after considering the record, the parties' filings, and arguments of counsel. *Id.* MD Now's main argument was lack of actual knowledge because the collection charge was proper under the agreement. *See* ECF No. 49-2. Notably, the court made this decision at the motion to dismiss stage, relying solely on the language of the contract. Now at the summary judgment stage, Plaintiff brings forth the same arguments but no additional facts, while Defendants have brought forward undisputed facts showing Defendants believed, albeit incorrectly, that they were in compliance with the Patient Contract.

Plaintiff attempts to skirt the issue of actual knowledge and argues that because Defendants had a pattern or practice of charging these fees, somehow that equates to

Defendants knowing the fees violated the FCCPA. One case Plaintiff cites to support this proposition, *Banner v. Wells Fargo Bank, N.A.*, No. 502007CA000815XXXXMBAO, 2011 WL 7446506 (Fla. Cir. Ct. Nov. 4, 2011), deals with the FDUTPA and is inapposite. The other case, *Hewitt v. Stern*, No. 2009CA036046XXXXXMBAH, 2012 WL 8018578 (Fla. Cir. Ct. Sept. 27, 2012), may support Plaintiff's position, but it is not binding on this court and is difficult to square with "the plain language of the FCCPA, which imposes the additional evidentiary bar to relief, proof of actual knowledge." *Prescott v. Seterus, Inc.*, 194 F. Supp. 3d 1290, 1296 (S.D. Fla. 2016), *rev'd on other grounds*, 684 F. App'x 947 (11th Cir. 2017). Even if Defendants do have a pattern of charging these fees, it is not itself evidence of knowledge.

Plaintiff also argues that because ICS has been sued in the past and has had judgment entered against it, ICS knew its conduct violated the FCCPA. However, the case cited by Plaintiff does not contain the same collection fee provisions and cannot be said to have given ICS knowledge that the collection charge at issue in this case was improper. *Acik v. I.C. Sys., Inc.*, 640 F. Supp. 2d 1019 (N.D. Ill. 2009). *Acik* involved a contract that made the consumer responsible "for all costs and fees, including attorney fees, and interest incurred from the date of my initial consultation with any physician . . . ." The court found that because there was no mention of collection fees *at all*, the language required too much of an inferential leap to presume that it included collection fees; therefore, collection costs were not expressly provided for by the contract. *Id.* Here, the contract specifically mentioned collection fees. *Acik* is therefore insufficient to give ICS the requisite actual knowledge.

Because Plaintiff has not established a genuine issue of material fact that Defendants had *actual* knowledge that the agreement did not allow for the specific collection charge assessed, Defendants are entitled to judgment as a matter of law on Plaintiff's FCCPA claims.

**C. Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.203(3), 501.204(1)**

The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Fla. Stat. § 501.204(1). "Trade or commerce" is defined as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or

thing of value, wherever situated." Fla. Stat. § 501.203(8). On its face, the FDUTPA does not appear to apply to debt collection practices, as Defendants argue, because collecting a debt does not involve a good or service. Several courts have agreed, holding "that debt collection activities are not 'trade or commerce' for FDUTPA purposes. . . . These cases hold that the debt collection activities at issue in those cases were not an attempt to advertise, solicit, provide, offer, or distribute any good or services or a thing of value, so FDUTPA does not apply." *Williams v. Nationwide Credit, Inc.*, 890 F. Supp. 2d 1319, 1321 (S.D. Fla. 2012) (citing *State v. Shapiro & Fishman, LLP,* 59 So.3d 353, 355–57 (Fla. 4th DCA 2011); *Law Office of David J. Stern, P.A. v. State,* 83 So.3d 847, 849–50 (Fla. 4th DCA 2011); *Kelly v. Palmer, Reifler & Assocs., P.A.,* 681 F.Supp.2d 1356, 1371–77 (S.D.Fla.2010); *Trent v. Mortgage Electronic Registration Sys., Inc.,* 618 F.Supp.2d 1356, 1365 n. 12 (M.D.Fla.2007)).

Plaintiff cites to several cases to support the proposition that "Florida courts have found that debt collection is within trade or commerce, and subject to the FDUTPA, when it involves unfair or deceptive conduct occurring outside of any legal entitlement, or when it involves the use of unfair or harassing collection practices." ECF No. 104, p. 12. "But such attempts to collect a debt do not constitute 'trade or commerce.'" *Owens-Benniefield v. Nationstar Mortg. LLC*, 2017 WL 3149429, at *7 (M.D. Fla. July 25, 2017). "An attempt to collect a debt by exercising one's legal remedies does not constitute 'advertising, soliciting, providing, offering, or distributing' as those terms are used in Fla. Stat. § 501.203(8)," even where the plaintiff alleges the defendants attempted to collect amounts exceeding what was owed. *Acosta v. James A. Gustino, P.A.*, 2012 WL 4052245, at *1 (M.D. Fla. Sept. 13, 2012) ("Plaintiff complains that the debt collection efforts were unlawful because the assessments against him were not properly authorized by the HOA Board of Directors, because the amount the Defendants sought to collect included usurious interest charges, and because the HOA's claims against him were time-barred.").

The cases cited by Plaintiff as most analogous do not apply in the instant case, as both involve mortgage loan servicers who charged the plaintiffs for services that were not performed. In *Martorella v. Deutsche Bank Nat. Trust Co.,* 931 F. Supp. 2d 1218, 1224 (S.D. Fla. 2013), the defendant allegedly charged the plaintiff excessive premiums for the provision of insurance—an actual product. "Indeed, the transactions at issue fall

comfortably within the definition of trade or commerce because it is alleged [the plaintiff] was the 'purchaser' of insurance that [the d]efendants 'provided, offered, or distributed.'" *Id.* Similarly, in *Alhassid v. Bank of America, N.A.*, 60 F. Supp. 3d 1302 (S.D. Fla. 2014), the loan servicer "billed Plaintiffs for *specific services* which were unauthorized and which [the loan servicer] never performed." *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1324 (S.D. Fla. 2014) (emphasis in original). The court specifically noted, "If all the [plaintiffs] alleged were loan collection activities, *even if those activities were improper*, FDUTPA would not apply." *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1323–24 (S.D. Fla. 2014) (emphasis added) (citing *State, Office of Att'y Gen. v. Shapiro & Fishman, LLP,* 59 So.3d 353 (Fla. 4th DCA 2011) (holding that allegations of fabricating false documents or presenting false or misleading documents for use in foreclosures cases did not constitute 'trade or commerce' in the FDUTPA context). Plaintiff here has only alleged that Defendants attempted to collect a charge that was not expressly authorized by the contract, not that the charge was excessive or that Defendant charged Plaintiff for a service that was not performed. The only service provided in the instant case was the medical care MD Now rendered to Plaintiff, which was indisputably provided and for which Plaintiff does not contest the amount charged.

While the court in *Nazario v. Professional Account Services, Inc.*, 2017 WL 1179917, *5 (M.D. Fla. Mar. 30 2017) found that the plaintiff's allegations that the defendant had attempted to collect a loan was within the purpose of the FDUTPA, the decision is against the weight of authority. *See supra*. Defendants are entitled to summary judgment on Plaintiff's FDUTPA claims.[5]

**D. Breach of Contract**

Plaintiff alleges MD Now breached its Patient Contract with Plaintiff when it charged the 20% collection fee. MD Now argues that the charge was allowed by the Contract and even if it was not, Plaintiff cannot show damages. To establish a breach of contract claim, Plaintiff needs to establish: "(1) a valid contract; (2) material breach; and (3) damages." *Med. Jet, S.A. v. Signature Flight Support-Palm Beach, Inc.*, 941 So. 2d 576, 581 (Fla. Dist. Ct. App. 2006). Assuming Plaintiff has shown the existence of the first two elements,

---

[5] Because I find that Defendants actions are not subject to the FDUTPA, I do not address Defendants' arguments that Plaintiff cannot prove damages under the statute.

Plaintiff has failed to raise an issue of material fact that he has suffered any damages as a result of MD Now's breach. "The underlying purpose of damages in actions premised on a breach of contract is to place the non-breaching party in the same position it would have occupied if the contract had not been breached." *Allapattah Servs., Inc. v. Exxon Corp.*, 61 F. Supp. 2d 1326, 1328 (S.D. Fla. 1999). "Under contract law, an injured party may look to the legal system to place it in the position it would have been in had the bargain been performed as agreed to; in other words, to achieve its expectation interest." *Air Caledonie Int'l v. AAR Parts Trading, Inc.*, 315 F. Supp. 2d 1319, 1337 (S.D. Fla. 2004) (citing *MCA Television Ltd. V. Public Interest Corp.*, 171 F.3d 1265, 1271 (11th Cir. 1999).

Here, Plaintiff received one letter from ICS with a $37.79 collection charge added on to a balance he legally owed. ECF No. 47-4. Plaintiff attempted to pay the balance owed plus the collection charge on ICS's website, but ran into issues and so paid only the balance due on MD Now's website. MD Now's SMF, ¶ 19. Plaintiff never paid the collection charge, nor is there any evidence that ICS or MD Now continued to seek payment of the collection charge or communicated with Plaintiff in any manner after ICS sent its one, single letter, although Plaintiff makes much of the fact that as of February 2017 ICS' records showed Plaintiff still owed the collection charge. ECF No. 105-11. Nevertheless, Plaintiff has not raised an issue of fact that this charge, which he never paid, has harmed him, especially where the record reflects that neither MD Now nor ICS have sought collection of the charge in the two years since ICS sent the letter. In essence, Plaintiff is in the same position he would have been in had MD Now not breached the contract: in possession of his $37.78. Plaintiff does not cite to any case law regarding contractual damages and simply states that the cases dealing with FDCPA and FDUTPA damages should apply. *See* ECF No. 104, p. 13–16. They do not. Defendant MD Now is entitled to judgment as a matter of law on Plaintiff's breach of contract claim.

### III. CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Summary Judgment (ECF No. 92) is **DENIED**. MD Now's Motion for Summary Judgment (ECF No. 89) and ICS' Motion for Summary Judgment are **GRANTED**. Plaintiff's Complaint is **DISMISSED**. All pending motions, if any, are **DENIED** *as moot*. A separate judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure shall issue concurrently.

**DONE and ORDERED** in chambers, at Miami, Florida, this 30th day of November 2017.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of record*